UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                                             :
MAEGEN HENRIQUEZ-FORD,                                       :
                            Plaintiff,                       :
                                                             :
            -v-                                              :
                                                             :           14-CV-2496 (JPO)
                                                             :
COUNCIL OF SCHOOL SUPERVISORS                                :
AND ADMINISTRATORS, et al.,                                  :           OPINION AND ORDER
                            Defendants.                      :
                                                             :
------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

      Plaintiff Maegen Henriquez-Ford ("Henriquez-Ford"), proceeding *pro se*, brings this action alleging that her former employer, the New York City Department of Education ("the DOE"), and the two labor unions that represented her during her employment, the Council of School Supervisors and Administrators ("the CSA") and the United Federation of Teachers ("the UFT"), along with various individual defendants associated with the DOE, the CSA, and the UFT (collectively, "Defendants"), discriminated against her in violation of various federal and state anti-discrimination statutes. The DOE, the CSA, and the UFT have each moved to dismiss the Amended Complaint. For the reasons that follow, the motions are granted and the case is dismissed.

**I.    Background**

      The Court takes the following facts, pleaded in the Amended Complaint and the attachments thereto, as true for the purpose of resolving the motions to dismiss.[1]

---

[1] Citations to the Amended Complaint are to the page numbers designated by the ECF docketing system.

Maegen Henriquez-Ford was employed by the DOE for over fifteen years, during which she worked in various capacities in the New York City school system.  She began as a teacher, was promoted to assistant principal, and, finally, was demoted to substitute teacher with the DOE's "Absent Teacher Reserve" or "ATR."  Over the course of her employment, she suffered several workplace injuries.  (Dkt. No. 10 ("Am. Compl.") at 25.)  First, in April 1998, a student "accidentally punched" her "in the head, causing [her] to have a concussion and head trauma."  She suffered "severe headaches, blurry vision, and severe trauma" as a result.  (*Id.*)

Next, on May 23, 2003, she was sent to "a satellite site" to "cover for a special education teacher who was absent."  "Shortly after arriving at the site," she "sat in a chair and placed [her] bag on the heavy old fashion [sic] wooden desk in the classroom to which [she] was assigned."  After she sat down, the legs of the desk "gave way," "causing [her] to fall and be pinned under the desk."  Two people were needed to remove the desk from on top of her.  (*Id.*)

At some point after the desk incident, Henriquez-Ford was promoted from teacher to assistant principal.  In January 2007, in her capacity as an assistant principal, she distributed lunches to students on the steps of Independence High School.  When she had finished handing out the lunches, she decided to return inside the school building, and "the entrance door . . . hit [her] when [she] opened it to enter."  She felt "extreme pain in [her] head, neck, and right side."  (*Id.*)

Henriquez-Ford "suffer[ed] with pain from [her] injuries for more than two weeks," after which she sought "additional medical help."  She "later learned" that she had "compressed a vertebrae [sic] and suffered a pinch [sic] nerve."  She "attempt[ed] to continue work in pain" for three weeks, but "suffered acute pain and could not work."  Her "medical doctor . . . and [] psychiatrist" advised her to stop working and obtain treatment.  (*Id.*)

Although Henriquez-Ford's doctors deemed her "unable to work," the DOE recommended that she return to work, as did the DOE "medical bureau." Defendant Principal Smolkin "humiliate[d] and harass[ed] Henriquez-Ford and her doctors "while [Henriquez-Ford] attempted to work and while [she] was trying to get rehabilitated." While she was "out on disability," he "began to fabricate false charges of incompetence and unprofessional behavior." These allegations began the day after Henriquez-Ford informed Smolkin that she "had become disabled and would be taking sick time as a result of [her] line-of-duty injury." Henriquez-Ford was subsequently "demoted" to the ATR, and her "health insurance was terminated prematurely and without warning." Further, she did not receive her "summer pay" and various "retro[active] raises of 2005 [through] 2007." (*Id.* at 26.)

Eventually, Henriquez-Ford returned to work as a substitute teacher in the ATR. While working at Chelsea High School, she was "assaulted by several students." One student threatened to "slash [her] throat" and told her that he and his "drug dealer friends in the school would hurt [her]." She became "frightened for [her] safety and felt completely unprotected in [her] place of work." She developed "anxiety disorder and severe depression." (*Id.*) "The administration did little to support [her]," and the UFT representative at Chelsea High School told the other teachers not to speak to Henriquez-Ford because she was "an ATR." Henriquez-Ford was told by others that Smolkin had told them not to speak to her because she is "a bitch." (*Id.*)

On December 9, 2009, Henriquez-Ford was "menaced" and "pushed by two students who were known troublemakers in [her] classroom." At some point on or after December 9, 2009, a "mouse jumped out of the closet where [Henriquez-Ford] was putting some books back, . . . scurried on [her] feet and darted across the room." Henriquez-Ford was "startled and mortified."

She felt dizzy, her "heart began to pound," her chest "hurt," and her "air constricted." She pushed the "emergency buzzer" in the classroom and was taken to St. Vincent Hospital in an ambulance, where she was treated and where she stayed overnight for observation. (*Id.*) As a result of the mouse incident, Henriquez-Ford became "disabled" "physically, psychologically, and emotionally" with "compressed vertebrae[,] nerve damage, pain inflammation of hands, . . . depression, and anxiety." (*Id.* at 27.)

Henriquez-Ford alleges that, after the mouse incident, she "repeatedly ask[ed] for a leave," which was "neither denied nor granted." She did not return to work, and it took her "two years to be rehabilitated." She received partial payment of her salary during this time, but was eventually terminated because "the DOE [claimed that she] was paid three years of salary" that she "was not entitled to." (*Id.*)

Henriquez-Ford further alleges that, during her time as a DOE employee, she "did not receive compensation that [she] was contractually entitled to" and "was not properly represented by CSA and UFT." (*Id.* at 4.) She says that she was "forced to hire legal help" at an expense of $8,000 because the CSA and UFT "repeated[ly] ignored [her] requests" for help. (*Id.* at 11.)

Henriquez-Ford brings this action against the DOE, the UFT, and the CSA, and various individuals associated with the three entities.[2] She alleges claims under Title VII of the Civil

---

[2] She also lists the City of New York as a defendant, but does not allege any claims against the City that are separate from claims against the DOE. The City and the DOE, however, are distinct legal entities, and the City cannot be held liable for the acts of the DOE or its employees. *See Fierro v. City of New York*, 591 F. Supp. 2d 431, 446 (S.D.N.Y. 2008), *rev'd in part on other grounds*, 341 F. App'x 696 (2d Cir. 2009); *see also Falchenberg v. N.Y.C. Dep't of Educ.*, 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005) ("While factual allegations must be construed in a light most favorable to the Plaintiff, the issue of whether or not [the Department of Education] is a department of the City is a legal issue. In the absence of any allegations demonstrating participation by the City, the complaint fails to state a cause of action against it."). The claims against the City are therefore dismissed.

Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (*Id.* at 1.) She also alleges that she is owed "correct pay." (*Id.* at 11.) Defendants have moved to dismiss the claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.     Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556 (internal quotation marks omitted))). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

In determining whether a plaintiff has pleaded facts sufficient to survive a motion to dismiss, a court will not consider mere conclusory allegations that lack a factual basis. *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010). A plaintiff's complaint "must at a minimum

assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680) (alterations and internal quotation marks omitted).  In assessing the sufficiency of the complaint, a court may consider "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and internal quotation marks omitted).  "Integral" documents are those "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

   Here, Defendants ask the Court to consider documents not attached to the Amended Complaint.  Some of these documents are integral to the Amended Complaint and therefore will be considered in ruling on the motions to dismiss.  The Court will consider the EEOC notices of charge submitted by the CSA and the DOE, (Dkt. No. 35, Ex. A, at 2 ("CSA EEOC Charge"); Dkt. No. 39 ("Rubinstein Decl."), Ex. G, at 3 ("DOE EEOC Charge")), Henriquez-Ford's New York State Division of Human Rights ("SDHR") Complaint against the DOE (Rubinstein Decl., Ex. G, at 4 ("DOE SDHR Complaint")), and the November 6, 2013 SDHR decision regarding this complaint. (Rubinstein Decl., Ex. H ("SDHR Decision")).  *See Lugo–Young v. Courier Network, Inc.,* No. 10 Civ. 3197, 2012 WL 847381, at *1 n. 2 (E.D.N.Y. Mar. 13, 2012) ("With respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims.") (citation and alteration omitted); *Veliz v. Collins Bldg. Svcs., Inc.,* No. 10 Civ. 6615, 2011 WL 4444498, at *1 n. 2

(S.D.N.Y. Sept. 26, 2011).  No party disputes the authenticity, accuracy, or relevance of the documents.

Finally, Henriquez-Ford's *pro se* complaint is subject to more lenient standards than a complaint filed by a represented party.  "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  Accordingly, the Court interprets the *pro se* Amended Complaint in this action with "special solicitude," to raise the "strongest [claims] that [it] suggest[s]."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam) (internal citations and alteration omitted).  Nevertheless, to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face.  *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

### III. Discussion

#### A. Federal Claims

Henriquez-Ford alleges claims of discrimination under three federal statutes: Title VII, the ADEA, and the ADA.  Defendants argue that these claims must be dismissed for various reasons, including that they are time-barred, that they have not been administratively exhausted, and that the facts in the Amended Complaint are insufficient to render the claims plausible.

As a preliminary matter, the claims against the individual defendants under Title VII, the ADEA, and the ADA are dismissed because those statutes do not subject individuals to personal liability.  *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]ndividuals are not subject to liability under Title VII." (internal quotation marks omitted));

*Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (summary order) (holding that "dismissal of the . . . ADEA claims against the individual Defendants was appropriate" because the statute does not "subject[] individuals, even those with supervisory liability over the plaintiff, to personal liability"); *Kalola v. Int'l Bus. Machines Corp.*, No. 13 Civ. 7339 (VB), 2015 WL 861718, at *6 n.10 (S.D.N.Y. Feb. 3, 2015) ("[T]here is no individual liability under . . . the ADA.").

Turning to the institutional defendants, the UFT argues that all federal claims asserted against it must be dismissed because those claims are time-barred. (Dkt. No. 25 ("UFT Mot.") at 3.) Under the ADA, Title VII, and the ADEA, a plaintiff must file an action in federal court within 90 days of receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). This time limit, although "subject to extension," is "not to be taken lightly." *Celestine v. Cold Crest Care Ctr.*, 495 F. Supp. 2d 428, 432 (S.D.N.Y. 2007); *see also Johnson v. A1 Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984). "In the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day," *Johnson*, 731 F.2d at 146, and where, as here, a plaintiff fails to raise such an equitable consideration, "the ninety day period should not be tolled and plaintiff's action should be dismissed," *Richards v. N. Shore Long Island*, No. 10 Civ. 4544 (LDW), 2011 WL 6102055, at *4 (E.D.N.Y. Dec. 6, 2011).

The EEOC right-to-sue letter issued to Henriquez-Ford in regard to her charge against the UFT purports to have been mailed on November 26, 2013. (Am. Compl. at 19.) "[N]ormally it may be assumed, in the absence of challenge," as is the case here, "that a notice provided by a government agency has been mailed on the date shown on the notice." *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466

U.S. 147, 148 & n.1 (1984)).  There is also a presumption that a mailed document is received three days after its mailing.  *See id.* at 525-26 (citing *Brown*, 466 U.S. at 148 n.1).  Henriquez-Ford has not given the Court any reason to believe that either of these assumptions is unwarranted here.  The Court therefore assumes that the letter was mailed on November 26, 2015, and that Henriquez-Ford received it three days later, on November 29, 2013.  Henriquez-Ford was therefore required to file her claims within 90 days of November 29, 2013, or by February 27, 2014.  She failed to do so.  In fact, she missed this deadline by almost five months, as she filed her claims against the UFT on July 18, 2014.  Accordingly, her Title VII, ADEA, and ADA claims against the UFT are time-barred, and are therefore dismissed.[3]

The DOE and the CSA have moved to dismiss Henriquez-Ford's Title VII and ADEA Claims on the ground that she failed to administratively exhaust those claims.  (*See* Dkt. No. 34 ("CSA Mot.") at 5-6; Dkt. No. 38 ("DOE Mot.") at 11-12.)  As a precondition to filing a Title VII or ADEA claim in federal court, a plaintiff must timely raise those claims before the EEOC.  *See Williams v. N.Y.C. Housing Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (Title VII) (citing 42 U.S.C. § 2000e-5); *Holowecki v. Federal Exp. Corp*, 440 F.3d 558, 562 (2d Cir. 2006) (ADEA) (citing 29 U.S.C. § 626(d)).  The purpose of administrative exhaustion is to avoid unnecessary federal court action by "giv[ing] the administrative agency the opportunity to investigate, mediate, and take remedial action."  *Stewart v. U.S. Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985).

---

[3] The UFT has not indicated which claims Henriquez-Ford included in her EEOC charge; nor have they submitted a copy of that charge with the Court.  In any event, discrimination claims under Title VII, the ADEA, and the ADA must be exhausted with the EEOC before they may be asserted in federal court.  Accordingly, to the extent that Henriquez-Ford's EEOC charge against the UFT did not include some of the federal claims that she asserts in this action, Henriquez-Ford has failed to administratively exhaust those claims, and therefore, as explained *infra*, they must be dismissed.

Here, although it is clear that Henriquez-Ford exhausted her ADA claims with the EEOC, the record does not support a finding that she exhausted her Title VII or ADEA claims with that agency. These claims are therefore dismissed without prejudice to renewal should Henriquez-Ford provide the necessary documentation or support for such exhaustion to the Court. *See Howell v. 1199 Union*, No. 14 Civ. 0174 (AT) (FM), 2015 WL 273655, at * 5 (S.D.N.Y. Jan. 16, 2015).[4]

Next, the CSA argues that Henriquez-Ford's ADA claim must be dismissed because it is time-barred. (CSA Mot. at 7-8.) ADA claims must be brought to the EEOC within 300 days of the discriminatory acts complained of, *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999) (citing 42 U.S.C. § 2000e-5(e)(1)), and the CSA argues that "undisputed facts outlined by David Grandwetter, the CSA attorney who represented [Henriquez-Ford] while she was a CSA member, clearly indicate that any act by him or other CSA defendants occurred more than 300 days prior to her filing her EEOC[] complaint on May 6, 2013." (CSA Mot. at 7-8.) At this stage in the proceedings, however, the Court will not consider facts outside the Amended Complaint, no matter how "undisputed" the CSA may believe them to be. Because the Amended Complaint does not specify when the CSA's representation terminated and when the acts complained of occurred, this argument fails.

However, the ADA claim against the CSA fails for a different reason: Henriquez-Ford has not alleged sufficient facts to make the claim plausible. The Amended Complaint contains

---

[4] Although the EEOC charge sent to the DOE purports to notify the DOE of an employment discrimination claim under Title VII, this appears to be an error, as the attached complaint contains no evidence that Henriquez-Ford intended to raise a Title VII claim. When asked to specify how she "believe[d she] was discriminated against," Henriquez-Ford checked the box for "disability," but not the boxes for national origin, race, color, ethnicity, or sex. Moreover, Henriquez-Ford's detailed narrative description of her claim makes no reference to the kind of harm cognizable under Title VII. (*See* Rubinstein Decl. Ex. G.)

very few facts as to the CSA's discriminatory actions. It states only that the union did "not properly represent[]" Henriquez-Ford (Am. Compl. at 4), and "repeated[ly] ignored [her] request" for help "to get salary and medical coverage that [she] was entitled to" (*id.* at 11). These allegations are nowhere near sufficient to state a plausible claim that the CSA discriminated against Henriquez-Ford because of a disability in violation of the ADA.[5]

Henriquez-Ford's ADA claim against the DOE is also not plausible as pleaded. To state a prima facie case of employment discrimination under the ADA, a plaintiff must show "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

Henriquez-Ford says that the DOE "demoted" and "terminated [her] unjustly after injuries [she] suffered during [her] line of duty," which injuries rendered her "emotionally and physically unable to work." (Am. Compl. at 9-10.) As summarized above, Henriquez-Ford alleges that she suffered a physical injury in 2007 when she was hit by a door, became unable to work as a result, and was subsequently demoted from assistant principal to substitute teacher

---

[5] To establish an ADA claim against a union, a plaintiff must show "(1) that the union breached its duty of fair representation; and (2) that its actions were motivated by discriminatory animus." *Mahinda v. Org. of Staff Analysts*, No. 11 Civ. 2652 (PKC), 2012 WL 1999691, at *3 (S.D.N.Y. June 1, 2012) (internal quotation marks omitted). Even assuming that Henriquez-Ford has established that the CSA breached its duty of fair representation by engaging in conduct "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary," *Jiggetts v. Allied Intern. Union*, No. 07 Civ. 11572 (JSR) (RLE), 2010 WL 2158331, at *3 (S.D.N.Y. Mar. 17, 2010) (quoting *NLRB v. Local 282, Int'l Brotherhood of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984)) (internal quotation marks omitted), she has not alleged any facts indicating that any such breach was motivated by discriminatory animus.

when she did not report to work. She also alleges that she suffered from depression and anxiety due to threatening and harassing behavior by students and an incident with a mouse in a classroom in 2009; that, as a result of these incidents, she needed two years' leave to "rehabilitate"; and that her two years of rehabilitation caused the DOE to terminate her employment. (*See id.* at 25-27.)

Henriquez-Ford's first allegation—that the DOE violated the ADA when it demoted her after she took medical leave for physical injuries caused by the 2007 door incident—is time-barred. As explained above, an ADA claim must be brought to the EEOC within 300 days of the alleged discriminatory act. Although the Amended Complaint is not precise as to when Henriquez-Ford was demoted from assistant principal to substitute teacher, it is clear that it occurred sometime before 2009. (*See id.* at 25 (describing events that occurred in 2009, while Henriquez-Ford was a member of the ATR).) Henriquez-Ford did not file her charge with the EEOC, however, until May 6, 2013, at least four years after the demotion, and therefore long after the 300-day time limit to bring the discrimination claim had expired. (*See* DOE SDHR Complaint.)[6] Accordingly, Henriquez-Ford's claim that her demotion from assistant principal to substitute teacher violated the ADA is dismissed.

Second, the facts in the Amended Complaint are insufficient to state a plausible claim of employment discrimination, both with respect to the demotion and with respect to the ultimate termination of Henriquez-Ford's teaching position. The Amended Complaint does not allege that Henriquez-Ford was "otherwise qualified" to perform her duties as assistant principal and substitute teacher with or without reasonable accommodation; rather, she states that she was

---

[6] Henriquez-Ford filed her complaint against the DOE with the SDHR. The SDHR forwarded the complaint to the EEOC. (*See* DOE SDHR Complaint; DOE EEOC Charge.)

completely unable to work as a result of her physical and psychological injuries.  (*See* Am. Compl. at 25, 27.)  Moreover, "although a temporary leave of absence, in some circumstances, can constitute reasonable accommodation," *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 377 (S.D.N.Y. 2007), the Amended Complaint does not allege that Henriquez-Ford sought a temporary leave of absence or any other "reasonable accommodation," *id.* at 375.  Rather, it alleges that she requested "leave" and stopped coming to work entirely after the door incident in 2007 (Am. Compl. at 26), and that she was absent for two years after the 2009 mouse incident (*id.* at 27).  It was only *after* Henriquez-Ford had been absent for these two years that the DOE terminated her.  (*Id.*)  "An employer cannot reasonably be expected to hold a job open for an employee without some indication that the employee is likely to return and some idea of when that is likely to happen."  *Id.*; *see also Parker v. Columbia Pictures, Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) (Sotomayor, J.) ("The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover, nor does it force an employer to investigate every aspect of an employee's condition before terminating him based on his inability to work."); *Brown v. Pension Bds.*, 488 F. Supp. 2d 395, 407 (S.D.N.Y. 2007) (holding that the ADA does not require an employer to give an employee "an open-ended, indefinite leave of absence with no guarantee that it would actually enable him to eventually return to work").[7]

In sum, Henriquez-Ford's ADEA, Title VII, and ADA claims are dismissed.

---

[7] Henriquez-Ford also checks the box for "retaliation" in the *pro forma* complaint (Am. Compl. at 2), and states that she was subject to a "hostile work environment" (*id.* at 11 ("I fought so hard to get justice that I was not aware of the devastating impact that harassment and impact of the hostile work environment [sic] would have on my health and recovery.").)  Because Henriquez-Ford has done no more than utter these terms, and because the Amended Complaint does not identify any protected activity or any conduct that rises to the level of a hostile work environment, these claims are dismissed with leave to amend.

B.     NYSHRL and NYCHRL Claims

Henriquez-Ford alleges that she was discriminated against on the basis of race, color, gender, sex, national origin, age, and disability, in violation of the NYSHRL and the NYCHRL. Defendants argue that this Court does not have subject matter jurisdiction over Henriquez-Ford's NYSHRL and NYCHRL claims because Henriquez-Ford elected to file those claims with the New York State Division of Human Rights ("SDHR") before filing them with this Court. (CSA Mot. at 9-10; DOE Mot. at 13; UFT Mot. at 5.)

The NYSHRL provides a plaintiff with a civil cause of action "in any court of appropriate jurisdiction . . . unless such person has filed a complaint" with the SDHR. N.Y. Exec. L. § 297(9). Similarly, the NYCHRL provides a cause of action "in any court of competent jurisdiction . . . unless such person has filed a complaint with the state division of human rights." N.Y.C. Admin. Code § 8-502(a). "Thus, both the NYSHRL and the NYCHRL require dismissal of a suit in court if the complainant lodges a complaint with . . . the SDHR." *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 127 (2d Cir. 2002)). "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under [Rule] 12(b)(1) rather than 12(b)(6)." *Id.* (citing *Moodie*, 58 F.3d at 882). "The election of remedies bar also precludes consideration of any claim—whether brought under the NYSHRL or the NYCHRL—arising out of the same incident on which [plaintiff's] SDHR complaint was based." *Id.* at 188.

Henriquez-Ford raised her disability discrimination claims against the DOE, the CSA, and the UFT with the SDHR. (*See* SDHR Decision; DOE SDHR Complaint; UFT SDHR Complaint; DOE EEOC Charge; UFT EEOC Charge; Dkt. No. 24 ("Lichten Decl.") ¶¶ 3-4; Am.

Compl. at 6-8.) Therefore, the Court does not have jurisdiction over these claims. Nor does the Court have jurisdiction over the disability claims brought against the individual defendants, as some of those claims were raised with the SDHR, and the others arise out of the same events on which Henriquez-Ford based her SDHR complaint, namely the injuries that she allegedly suffered on the job and her demotion and termination as a result.

There is no evidence in the record that Henriquez-Ford raised her remaining, non-disability discrimination claims with the SDHR. In any event, those claims are not plausible as pleaded. Henriquez-Ford states no facts to support the conclusory allegations that she was discriminated against on the basis of race, color, gender, sex, national origin, and age. In fact, she does no more than check these boxes in the *pro forma* complaint (*see* Am. Compl. at 4); this is not sufficient to state a plausible claim of discrimination. These claims are therefore dismissed.

   C.  **Claim for Unpaid Wages**

Although not formally alleged, Henriquez-Ford appears to assert a claim against the DOE for unpaid wages. (Am. Compl. at 4.) Her allegation seems to be twofold. First, she alleges that she is due wages from 2005 through 2007, including "retro[active] raises" for that time period and "summer pay." (*Id.* at 26.) Second, she complains that the lawyer who settled an FLSA suit against the DOE for unpaid wages in 2012 erred in obtaining a consent judgment for the "minimum wage" and not Henriquez-Ford's "contractual rate of pay." The lawyer obtained this consent judgment, Henriquez-Ford says, "without [her] consent." (*Id.* at 27.) The DOE argues that these claims are barred by the doctrine of *res judicata*. (DOE Mot. at 13-15.)

"The doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or

could have been raised in that action.'" *Monahan v. N.Y.C. Dep't of Corrections.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). To prove that a claim is barred by *res judicata*, a defendant must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff[] or those in privity with [the plaintiff]; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* at 285 (citing, *inter alia*, *Allen*, 449 U.S. at 94). *Res judicata* bars "all other claims arising out of the same transaction or series of transactions . . . , even if based upon different theories or if seeking a different remedy." *Seavey v. Chrysler Corp.*, 930 F. Supp. 103, 106 (S.D.N.Y. 1996) (ellipsis in original) (internal quotation marks omitted).

In September 2012, Henriquez-Ford initiated an FLSA action in this district against the DOE. *See Henriquez-Ford v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 6927 (GBD). In that action, she alleged that the DOE had not paid her for work she did on various days in May and June 2012. *Id.*, Dkt. No. 1. The case ended with a consent judgment in Henriquez-Ford's favor in the amount of $1,150 in back pay, $1,150 in liquidated damages, and $28,850 in attorney's fees and costs. *Id.*, Dkt. No. 52. A consent judgment is considered an "adjudication on the merits" for the purpose of *res judicata*. *See Hoffenberg v. Hoffman & Pollok*, 288 F. Supp. 2d 527, 537 (S.D.N.Y. 2003) ("Consent judgments are accorded *res judicata* effect, as they are exercises of judicial power) (citing *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987)).

Henriquez-Ford's present claim against the DOE for unpaid wages in 2005 through 2007 could have been litigated in her prior action against the DOE, and her allegation that she is due a certain wage for the unpaid hours that she worked in 2012 was litigated and resolved in the prior action. These allegations are therefore barred by the doctrine of *res judicata*. Henriquez-Ford's

claim that the lawyer who entered into the consent judgment on her behalf did so without obtaining her consent, however, is not barred by the doctrine of *res judicata*, as that claim—which could be asserted only against her lawyer—could not have been litigated in the prior action.

Nevertheless, this allegation—even if it is true—does not affect the *res judicata* effect of the consent judgment. While Henriquez-Ford's lawyer may not have had actual authority to execute the consent agreement, Henriquez-Ford has not alleged that her lawyer was without apparent authority to do so.[8] She does not claim that she ever represented to the DOE or the court that oversaw those proceedings that her attorney lacked the authority to enter into a settlement on her behalf. Therefore, Henriquez-Ford has not pleaded sufficient facts to plausibly allege that she is not bound by that judgment. *See Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, No. 99 Civ. 3227 (JGK), 2002 WL 1610923, at *7 (S.D.N.Y. July 22, 2002) (holding, on summary judgment, that the plaintiff had failed to create a material issue of fact as to the validity of a stipulation where she contested only her lawyer's actual authority to enter into the agreement, and not her apparent authority). Henriquez-Ford's claim for unpaid wages is therefore dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' three motions to dismiss the Amended Complaint are GRANTED, and all claims are hereby dismissed. The Court grants Plaintiff leave to amend. Any further amended complaint, to the extent permitted by this opinion, shall be filed on or

---

[8] *See* Restatement (Third) of Agency § 2.03 ("Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.").

before July 24, 2015.  If no such amended complaint is filed by July 24, 2015, the dismissal shall be with prejudice and the case shall be closed.

The Court also GRANTS Plaintiff's request that it "add page 20 to page 20 of [her] Amended Complaint."  (Dkt. No 47.)

The Clerk of Court is directed to close the motions at Docket Numbers 23, 33, and 37.

SO ORDERED.

Dated: June 23, 2015
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY MAILED TO PRO SE PARTY